IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS E. PEREZ, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR,<br><br>    Petitioner,<br><br>   v.<br><br>RMRF ENTERPRISES, INC.,<br><br>    Respondent.<br>_____/ | No. C 13-80059 SI<br><br>**ORDER DENYING MOTION FOR CIVIL CONTEMPT** |

Now before the Court is petitioner's motion for civil contempt, originally filed on December 20, 2013. For the reasons that follow, the Court DENIES petitioner's motion.

**BACKGROUND**

On March 21, 2013, petitioner, Secretary of Labor,[1] United States Department of Labor, commenced this action against respondent RMRF Enterprises. Petitioner sought an order enforcing an administrative subpoena that had been issued and served upon respondent on October 10, 2012, in connection with an investigation into respondent's ERISA compliance. On May 14, 2013, the Court issued an Order to Show Cause why the subpoena should not be enforced. On July 26, 2013, the Court held a hearing on the matter. Respondent did not appear at the July 26, 2013 hearing. On July 30, 2013,

---

[1] This case was previously captioned *Harris v. RMRF Enterprises, Inc.* On July 23, 2013, Thomas E. Perez was sworn in as Secretary of Labor. The caption has been altered to reflect this change.

the Court granted the petition, and ordered respondent to produce all documents responsive to the subpoena by August 16, 2013.

On September 9, 2013, petitioner contacted respondent's representative, Daniel Shaw, and informed Mr. Shaw that, if respondent did not comply with the Court's Order by September 23, 2013, petitioner would initiate civil contempt proceedings. Declaration of Rose Darling in Support of Secretary's Motion for Civil Contempt ("Darling Decl.") Ex. A. On September 25, 2013, Mr. Shaw responded that he was in the process of liquidating the relevant 401K Plan, and requested that petitioner suspend its inquiry for 90 days. *Id.* Ex. B. On October 24, 2013, Mr. Shaw represented that he would produce additional material after November 11, 2013. *Id.* Ex. C. On November 14, 2013, petitioner contacted Mr. Shaw, asking when it could expect receipt of the documents. *Id.* On November 18, 2013, Mr. Shaw responded that he would produce the documents by November 26, 2013. *Id.* Ex. D. On December 2, 2013, petitioner again contacted Mr. Shaw and informed him that, if it did not receive the responsive documents by December 4, 2013, it would file a motion for civil contempt. *Id.* Ex. E. On December 9, 2013, petitioner informed Mr. Shaw that it would be proceeding with its civil contempt motion, given that it had not received any documents from him. *Id.* Ex. F. Also on December 9, 2013, Mr. Shaw responded that he had "procured some of the material," and that he would "continue to attempt to deal with this issue . . . ." *Id.* Ex. G. Petitioner asked Mr. Shaw to identify what he had procured and when he would produce it. *Id.* Mr. Shaw never responded. Darling Decl. ¶ 8.

On December 20, 2013, petitioner filed a motion for civil contempt which was set for hearing on February 28, 2014. On February 26, 2014, the parties filed a stipulation, informing the Court that respondent had retained counsel, and continuing the hearing until April 4, 2014. On March 28, 2014, the parties filed another stipulation, continuing the hearing until May 23, 2014. On May 22, 2014, the parties filed another stipulation, continuing the hearing until June 27, 2014. On June 19, 2014, the parties filed another stipulation, continuing the hearing until July 11, 2014. On July 11, 2014, the parties appeared before the Court and the Court ordered supplemental briefing on the matter. Both parties complied and those papers are now before the Court.

The documents now before the Court indicate that respondent has made the following productions pursuant to the Court's July 30, 2013 Order. On February 25, 2014, shortly after respondent

2

1 first retained counsel, respondent produced between 224 and 234 pages of material. Declaration of
2 Richard Schramm in Support of Respondent's Supplemental Motion ("Schramm Decl.") Ex. 2. On
3 March 7, 2014, respondent produced approximately 100 additional pages of material. *Id.* Ex. 3. On
4 March 13, 2014, respondent produced 35 additional documents. *Id.* Ex. 4. On May 15, 2014,
5 respondent produced 179 additional documents. *Id.* Ex. 5. On May 19, 2014, respondent produced 186
6 additional documents. *Id.* Ex. 6. In connection with this production, respondent invited petitioner to
7 send an investigator to Mr. Shaw's office to review any additional documents petitioner believed were
8 responsive. *Id.*

9 On June 10, 2014, petitioner deposed Mr. Shaw. Declaration of Rose Darling in Support of
10 Secretary's Supplemental Memorandum ("Suppl. Darling Decl.") ¶ 2. During the deposition, Mr. Shaw
11 explained his understanding that he was only required to produce documents in the possession of the
12 401K plan, but not documents related to the plan that were in RMRF's possession. *Id.* Ex. A. Mr. Shaw
13 indicated that there might be documents related to paid-off loans relevant to the plan, in RMRF's
14 storage. *Id.* He apparently indicated that there are some 150-200 storage boxes that might contain this
15 material. *Id.*

16 Following Mr. Shaw's deposition, petitioner contacted respondent and requested "[a]ll
17 documents relating to each and every loan identified in the Plan's Balance Sheet any time during the
18 period 2007 to 2013 . . . ." *Id.* Ex. B. On July 3, 2014, respondent informed petitioner that it believed
19 that complying with this request – which respondent views as new and different from the original
20 subpoena – would require evaluation of many documents, going back into the 1990s. Schramm Decl.
21 Ex. 7. Respondent estimated that there are approximately 40 investments that need to be tracked back
22 into the 1990s. *Id.* On July 11, 2014, respondent agreed to provide petitioner with a spreadsheet
23 tracking all participant activity for a period of almost 15 years. *Id.* Ex. 8. On July 17, 2014, respondent
24 produced 112 additional pages of material, showing complete tracking activities for several investments.
25 *Id.*

26 Petitioner now moves for an Order finding respondent in civil contempt for violating the Court's
27 July 30, 2013 Order. Petitioner requests that the Court impose a $100 fine for each day that respondent
28 continues to violate the Order, and also requests an award of fees and costs associated with bringing this

3

1 motion and taking Mr. Shaw's deposition. Petitioner further asks that the Court toll the statute of
2 limitations applicable to its enforcement of ERISA, from October 24, 2012 – the date on which
3 respondent was initially to comply with the subpoena – until such time as petitioner notifies the Court
4 that respondent has fully complied with the Order.

## LEGAL STANDARD

"A district court has the power to adjudge in civil contempt any person who willfully disobeys a specific and definite order of the court." *Gifford v. Heckler*, 741 F.2d 263, 265 (9th Cir. 1984). Civil contempt consists of a party's disobedience to "a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006). The disobeyed order that serves as the basis for a finding of civil contempt must be clear in its commands. *See Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 465 (9th Cir. 1989) (stating that court order must be "specific and definite"). To succeed on a motion for civil contempt, the moving party must "show by clear and convincing evidence that [the nonmoving party] violated the [court order] beyond substantial compliance, and that the violation was not based on a good faith and reasonable interpretation of the [order]." *Wolfard Glassblowing Co. v. Vanbragt*, 118 F.3d 1320, 1322 (9th Cir. 1997). "'Substantial compliance'" with the court order is a defense to civil contempt, and is not vitiated by "'a few technical violations'" where every reasonable effort has been made to comply." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993) (quoting *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 891 (9th Cir. 1982)).

To find a prima facie case of contempt, a court must find that (1) the nonmoving party violated a specific and definite court order; (2) beyond substantial compliance; (3) not based upon a reasonable and good faith interpretation of the order; and (4) the foregoing has been shown by clear and convincing evidence. *See id.* If the moving party establishes a prima facie case of contempt, the nonmoving party must show that he or she took every reasonable step to comply with the Court's order. *Sekaquaptewa v. MacDonald*, 544 F.2d 396, 404 (9th Cir. 1976). In fashioning civil contempt sanctions, the Court has discretion to award reasonable fees and costs as a remedial measure. *Perry v. O'Donnell*, 759 F.2d 702, 704-05 (9th Cir. 1985).

4

**DISCUSSION**

Petitioner asks the Court to find respondent in civil contempt, arguing that respondent has failed to comply fully with the subpoena, specifically with request number nine which asks for "[a]ll documents showing or describing Plan assets, including Plan account statements and documents showing or describing loans from the Plan assets." *See* Dkt. No. 5 Ex. A.

The Court will not find respondent in civil contempt under the circumstances presented here. Respondent admits that petitioner was frustrated in its efforts to seek compliance with the subpoena prior to February, 2014, when respondent finally retained counsel in connection with this matter. However, since February, 2014, the record before the Court indicates that respondent has been diligently attempting to comply with the subpoena's dictates. The record indicates that, by May 19, 2014, respondent believed that it had fully complied with the subpoena. *See* Schramm Decl. Ex. 6 ("Based on [Mr. Shaw's] declaration, we believe he has combed the universe of locations where he believes documents might exist, and with today's submission, he has provided all documents within his possession, custody, or control."). At Mr. Shaw's June 10, 2014 deposition, he explained that he believed the subpoena requested only those documents in the Plan's custody, and not documents that might relate to the Plan's investments that were in RMRF's possession. *See* Suppl. Darling Decl. Ex. A. He indicated that RMRF probably had documents relating to Plan investments in storage, contained in myriad storage containers. *Id.* Respondent asserts that it is willing to cull through these boxes and produce the additional documents, but that this additional production will take time.

The Court finds that respondent attempted to comply with the Court's Order, and that any misunderstanding was based upon a reasonable, good faith interpretation of that Order. Accordingly, the Court declines to find respondent in civil contempt.[2] However, the Court ORDERS respondent to produce the additional documents petitioner requests by October 3, 2014.

Finally, the Court will not toll the applicable statute of limitations. ERISA requires the Secretary to file suit within three years of the time it learns of the violative conduct. 29 U.S.C. § 1113. Petitioner first issued the subpoena in this case on October 10, 2012. It therefore has more than one year

---

[2] Given this finding, the Court further declines to award petitioner its requested fees and costs.

5

remaining in which to complete its investigation and file suit if it so chooses. Additionally, if the statute of limitations runs before petitioner files suit, it can always seek equitable tolling at that time.

## CONCLUSION

For the foregoing reasons and for good cause shown, and on the basis of the record before it, the Court hereby DENIES the motion for civil contempt. Respondent is ORDERED to produce the additional documents requested **not later than October 3, 2014**. This Order resolves Docket No. 21.

**IT IS SO ORDERED.**

Dated: August 6, 2014

SUSAN ILLSTON
UNITED STATES DISTRICT JUDGE